■ ALAN FIRESTONE et al., Appellants-Respondents, v DAVID MINKIN, Respondent-Appellant.—In an action for specific performance of two contracts to sell parcels of real property, (1) the plaintiffs appeal, as limited by their brief, from so much of an order of the Supreme Court, Nassau County (Roncallo, J.), dated March 15, 1988, as denied their motion for summary judgment, and (2) the defendant cross-appeals, as limited by his brief, from so much of the same order as denied his cross motion for summary judgment.

Ordered that the order is modified, on the law, by deleting the provision thereof which denied the plaintiffs' motion for summary judgment and substituting therefor a provision granting the motion; as so modified, the order is affirmed insofar as appealed and cross-appealed from, with costs to the plaintiffs, and the matter is remitted to the Supreme Court, Nassau County, for entry of an appropriate judgment.

On May 22, 1978, the defendant entered into virtually identical contracts with each of the plaintiffs whereby he agreed to sell each of the plaintiffs adjacent parcels of land within a planned subdivision known as Harbor Hill Estates. The agreements provided that the parcels were intended to be sold as developed lots "conforming with local requirements" as building lots for one-family houses. Paragraph 15 of the contract between the defendant and the plaintiff Firestone provides as follows:

"The deed shall be delivered upon the receipt of the payments herein provided for * * * within fifteen (15) days after notice in writing * * * from the Seller to the Purchaser, that the Harbor Hill Map has been filed in the office of the Nassau County Clerk * * *.

"In the event that the Seller has been unable to file said map within eighteen (18) months from the date of the contract, for any reason whatsoever, or in the event that the Seller is unable to convey title in accordance with the terms of this contract, the sole liability of the Seller will be to refund to the Purchaser the amount paid on account of the purchase price, together with the accrued interest * * * and upon such refund and payment being made this contract shall be considered null and void and cancelled. However, Seller represents that he will use his best efforts to obtain approval

of the subdivision substantially as per map or with reasonable adjustments or amendments to conform with town or village requirements, if necessary. Purchaser shall have the option to extend Seller's time to file said map."

The contract between the defendant and the plaintiff Littleford contains a similar provision.

The defendant's attorney sent identical letters dated October 31, 1979, to each of the plaintiffs requesting that they authorize the extension of the defendant's time to file "The Harbor Hills Map" by six months. Each plaintiff signed the authorization, thereby extending the defendant's time to file the map until May 22, 1980. When, some seven months after this expiration date, it appeared that neither subdivision approval nor a filing of the map was imminent, the plaintiffs' attorney sent a letter dated December 19, 1980, to the defendant's attorney advising him that the plaintiffs were extending the time to file the map, "pursuant to paragraph 15 sine die". The letter further advised the defendant's attorney that if he wanted a "written agreement regarding a specific extension", the plaintiffs would agree to sign it, once it was forwarded to them. Neither the defendant nor his attorney ever responded to this note. Nevertheless, the defendant continued to pursue a course of action aimed at obtaining subdivision approval. During the next few years, he obtained necessary clearances, permits, and variances from various governmental bodies.

On August 6, 1984, the Village of Roslyn Harbor Planning Board (hereinafter the planning board) granted final approval to the defendant's subdivision application subject to various "additions, changes, limitations and requirements". The planning board granted the defendant leave to file the final subdivision map within 18 months of the August 6, 1984, approval. On January 28, 1986, less than 1 month before the 18-month period expired, the defendant went before the planning board and made a formal application for an extension of time to file the final subdivision map. The planning board adopted a resolution allowing the defendant until August 5, 1986, to file the final subdivision map. Once again, the defendant did not file the final subdivision map by the required date. Two days after the expiration date, the defendant's engineers sent a letter dated August 7, 1986, to the planning board again requesting an extension of time to file the final subdivision map. In his written response, the Village Attorney indicated that the planning board would not take any action until a formal application for extension was made to the

planning board. The defendant never responded to the letter and never made a formal application for an extension of time to file a final subdivision map.

Thereafter, in November 1986, the defendant's attorney sent letters to the plaintiffs, advising them that the defendant considered the contract to be canceled and returning their down payments. The checks were sent back to the defendant's attorney with letters demanding specific performance.

The plaintiffs commenced this action for specific performance of the contracts, and, after joinder of issue, the plaintiffs moved and the defendant cross-moved for summary judgment. The Supreme Court denied both the plaintiffs' motion and the defendant's cross motion.

We conclude that the Supreme Court erred in denying the plaintiffs' motion for summary judgment. Notwithstanding the defendant's claim to the contrary, we conclude that the defendant agreed to an indefinite extension of the time in which to file a final subdivision map. Although the defendant never responded to the plaintiffs' letter of December 19, 1980, which proposed an indefinite extension of the defendant's contractual obligation, the defendant's conduct, after receiving the letter, supports the conclusion that he had accepted the plaintiffs' proposal (see, 57 NY Jur 2d, Estoppel, Ratification and Waiver, § 77).

Moreover, the record indicates that as of early 1986, the defendant ceased making his contractually mandated good-faith efforts to file the final subdivision map. The defendant's attempt, in November 1986, to terminate the contract and to limit his liability by refunding the plaintiffs' down payments, was based on his allegation, contained in his affidavit submitted in support of his cross motion for summary judgment, that compliance with his contractual obligation would be more time consuming and costly than he had originally planned. This allegation is insufficient to defeat the plaintiffs' motion for summary judgment (see, generally, 407 E. 61st Garage v Savoy Fifth Ave. Corp., 23 NY2d 275, 281-282).

We have reviewed the defendant's remaining arguments and find them to be without merit. Mangano, J. P., Brown, Kunzeman and Kooper, JJ., concur.